UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------
In re

    RAMA GROUP OF COMPANIES, INC.           00-12654 K

                Debtor                      <u>DECISION & ORDER</u>
------------------------------------------------------

                Donald P. Sheldon, Esq.
                300 International Drive, Suite 100
                Williamsville, New York 14221-5724
                Attorney for Committee of Unsecured Creditors

                The Wolford Law Firm, LLP
                Michael R. Wolford, Esq., of counsel
                Elizabeth A. Wolford, Esq., of counsel
                James A. Hobbs, Esq., of counsel
                600 Reynolds Arcade Building
                Rochester, New York 14614
                Attorneys for Hurwitz & Fine, P.C.; Lawrence C.
                Franco, Esq.; Roger L. Ross, Esq.; and
                Robert P. Fine, Esq.

Bucki, Chief U.S.B.J., W.D.N.Y.

      In this Chapter 11 proceeding, a law firm and three of its partners have moved to dismiss a motion filed by the Official Committee of Unsecured Creditors ("the Committee") to compel a disgorgement of legal fees and the imposition of compensatory sanctions. The deciding issues include the applicability of a general release, limitations on the review of fees for pre-petition services, and whether this court may reconsider a prior interim allowance for post-petition services.

      Richard A. Maussner and his son, Mark E. Maussner, were the owners of a closely held corporation called Rama Group of Companies, Inc. (hereinafter "Rama"). In 1999, the Maussners and their corporation asked attorneys at the law firm of Hurwitz & Fine, P.C., to assist them in the restructuring and partial sale of their business. Consequently, early in the year 2000, four of the company's divisions were transferred to Mark E. Maussner for

what was later alleged to be an inadequate consideration. Meanwhile, Richard Maussner was negotiating a sale of the company's remaining divisions to Strategic Publications, LLC, for an anticipated consideration of $8,425,000. As originally contemplated, the transaction would also require that Richard Maussner receive $100,000 as consideration for his covenant not to compete and $25,000 as compensation under a consulting agreement. While the parties were reviewing drafts of the sales agreement, however, the Internal Revenue Service obtained a warrant to search both the business and residence of Richard Maussner. Thereafter, Strategic Publications would significantly revise its proposal. Ultimately, on May 8, 2000, a sales contract (hereafter the "Asset Purchase Agreement") was signed by Rama, Richard Maussner, and Metro Group, Inc., a wholly owned subsidiary of Strategic Publications. Metro Group agreed to pay to Rama a consideration of only $5,000,000, but to extend to Richard Maussner a personal loan for $300,000 and an employment contract providing an annual compensation of $200,000 for each of five years. The Asset Purchase Agreement further provided that Rama would seek protection under Chapter 11 of the Bankruptcy Code.

To assist with preparation of its bankruptcy petition, Rama retained the services of Harter, Secrest & Emery, P.C. Meanwhile, Richard Maussner hired the firm of Bluestein & Muhlbauer, P.C., to represent him in any bankruptcy proceeding. Hurwitz & Fine agreed to accept appointment as special counsel for the purpose of finalizing a closing of the Asset Purchase Agreement. The present dispute relates to the services that Hurwitz & Fine provided to Rama both pre-petition and during the pendency of the current case.

As anticipated by the Asset Purchase Agreement, Rama filed a petition for relief under Chapter 11 on May 19, 2000.[1] Thereafter, a series of notable events occurred in rapid succession. On May 23, the Bankruptcy Court approved the interim appointment of Harter, Secrest & Emery as general bankruptcy counsel and of Hurwitz & Fine as special

---

[1] My esteemed colleague, the Honorable Michael J. Kaplan, presided as to all aspects of this case until April 30, 2012, when he recused from deciding the present motion for sanctions.

counsel.  Other "first day" orders included authorizations to pay current payroll and tax obligations, and to secure post petition financing on an emergency basis.  Then on June 7, the debtor moved to establish procedures to consider a sale under 11 U.S.C. § 363 of substantially all of the debtor's assets to Metro Group, Inc., or to a party presenting a higher or better offer.  By order dated June 14, the court approved the sale procedures and set June 30 as the date to consider alternative bids.  On June 19, the court granted final approval for the appointment of general and special counsel.  Both firms then appeared on June 30 in support of a sale to Metro Group, Inc.  After hearing all arguments, the court granted its order authorizing a closing under terms of the Asset Purchase Agreement.

While the above mentioned events were occurring, the Office of the United States Trustee was soliciting creditors for possible appointment to an official committee of unsecured creditors.  The trustee finalized the appointment of the Committee on June 12; and on August 7, the Bankruptcy Court approved the selection of Donald P. Sheldon as Committee counsel.  By then, the debtor had essentially completed a sale of substantially all of its assets.  Nonetheless, the Committee undertook an investigation of potential sources of recovery.  After a hearing on March 6, 2002, the Bankruptcy Court further authorized the Committee, on behalf of the debtor's estate, to pursue claims arising under Chapter 5 of the Bankruptcy Code.

On March 7, 2002, the Committee commenced six adversary proceedings, two of which have special relevance to the present dispute.  In Adversary Proceeding # 02-1097, the Committee named Richard Maussner as a defendant in an action to recover fraudulent conveyances, preferences, and money owed.  In particular, the complaint alleged that prior to the filing of the debtor's bankruptcy petition, Richard Maussner had diverted corporate assets having a value of at least $1,274,379.15.  The Committee also commenced Adversary Proceeding #02-1098 against Richard Maussner and Metro Group, Inc., to recover the salary that Metro Group had agreed to pay to Maussner.  Claiming that Maussner and Metro Group had misled the Bankruptcy Court by failing to disclose

important facts about the Asset Purchase Agreement, this second complaint alleged that Maussner's post petition salary represented a fraudulent diversion of corporate assets.

The Creditors' Committee eventually negotiated separate settlements with Richard Maussner and with Metro Group. By order dated August 29, 2006, with regard to claims against Richard Maussner only, the Bankruptcy Court approved a settlement that resulted in a recovery to the estate of $385,000. Thereafter, the remaining dispute with Metro Group became the subject of a lengthy trial in 2010. Before the court issued its final decision, however, Metro Group agreed to a settlement in the amount of $200,000, which the court then approved by order dated June 30, 2011.

On January 31, 2012, the Official Committee of Unsecured Creditors filed a motion for sanctions against the law firm of Hurwitz & Fine and against three of its partners. In papers that include 198 averments, the Committee alleges that these counsel had violated fiduciary duties and professional responsibilities while representing both the debtor and Richard Maussner before and during the bankruptcy proceeding. Without attempting to summarize all of its allegations, we note that the Committee argues generally that Hurwitz & Fine facilitated outcomes that inured to the benefit of the firm and Richard Maussner, but to the detriment of Rama and its creditors. For example, the Committee contends that Hurwitz & Fine concealed critical information and thereby inhibited the ability of the Court to evaluate the merits of the Asset Purchase Agreement. The Committee seeks disgorgement of fees previously paid, as well as the disallowance of any additional fee request and the imposition of compensatory sanctions in excess of $2 million. The firm and partners vigorously deny the allegations, but preliminarily have cross-moved to dismiss the Committee's motion. In the cross-motion, Hurwitz & Fine has raised ten points of argument. The court has carefully examined these arguments as well as all other contentions that the parties have presented in their papers and orally. At this time, we will not resolve any underlying factual dispute. Rather, this opinion will limit its discussion to

the firm's cross-motion, which is most effectively resolved through a consideration of remedies that the Committee seeks in its motion.

The Committee's motion seeks essentially three forms of monetary relief.  For ease of discussion, we will consider these remedies in the order of compensatory sanctions, the disgorgement and disallowance of pre-petition fees, and the disgorgement of fees for post-petition services.

Compensatory Sanctions

The Committee's request for compensatory sanctions is essentially an attempt to recover damages.  As such, it qualifies precisely as "a proceeding to recover money or property."  Pursuant to Bankruptcy Rule 7001, a party can secure this relief only by means of an adversary proceeding and not by motion.  In response, the Committee argues that this Court has authority to preside over matters pertaining to claims of attorney misconduct.  Indeed, courts have sanctioned attorney misconduct that occurs in its presence or that arises from activity that is subject to the court's supervision.  For this reason, the Committee may seek by motion to compel a disgorgement of post-petition legal fees.  But the Committee overreaches when it also moves to secure the remedy of compensation for damages incurred.  If it had commenced an adversary proceeding, the Committee would still need to address a variety of jurisdictional and other defenses, including statutes of limitation.  For now, it suffices to conclude that the Committee may not by mere motion obtain an award of compensatory sanctions or damages.  Accordingly, the cross-motion to dismiss this portion of the Committee's request is granted.

Even if we could consider a motion to award compensatory sanctions, a prior general release has absolved Hurwitz & Fine from liability.  In requesting compensatory sanctions, the Committee looks to recover damages that allegedly resulted from activities about which Hurwitz & Fine had provided legal advise or assistance to or for the benefit of Richard Maussner.  These, however, are the same damages for which the Committee sought

recovery in Adversary Proceeding #02-1097 and Adversary Proceeding #02-1098. Both matters are now settled. By order dated August 29, 2006, the Bankruptcy Court entered its order approving a certain Settlement and Release Agreement as between Richard Maussner and the Official Committee of Unsecured Creditors of Rama, on behalf of the debtor's estate. Consequently, the Committee for itself and on behalf of the bankruptcy estate is now bound by paragraph 7 of the Settlement and Release Agreement, which in relevant part states as follows:

> "Maussner and the Committee, on behalf of the Debtor's estate, their successors and assigns, if any, and their agents, representatives and *attorneys*, do hereby unconditionally and irrevocably hold harmless, remise, release, quit claim and forever discharge the other's respective successors or assigns, agents, representatives and *attorneys*, if any, of and from any and all rights, liabilities, debts, sums of money, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, damages, claims and demands whatsover, in law or in equity, whether known or unknown, contingent or accrued, which either party has or might subsequently have against the other by reason of any matter or thing whatsoever arising out of or in any way connected directly or indirectly with the facts surrounding the [Adversary Proccedings]" (emphasis added).

In now seeking to impose sanctions, the Committee contends that Hurwitz & Fine represented both Maussner and Rama. Thus, paragraph 2 of the Committee's motion recites that "[t]he law firm also represented Richard A. Maussner ('Mr. Maussner'), individually . . . in his personal real property transactions, and in his individual business ventures, including, but not limited to, Rama Farms." Indeed, the essence of the Committee's argument is that this joint representation created a conflict of interest. Having served as attorneys for Maussner, Hurwitz & Fine and its indvidual partners will now enjoy the benefit of the release to which the Committee itself consented as part of the settlement with Maussner. Further, in papers filed on June 23, 2006, the Committee's attorney represented that "[t]he Debtor has reviewed the Settlement and Release Agreement and joins in this Motion [for its approval]."

For good reason, parties to a settlement will often seek to include their attorneys within the list of beneficiaries of any mutual release. Otherwise, to the extent that a claim is later asserted against counsel, the attorney might attempt to obtain further reimbursement from the settling client. Here, the Settlement and Release Agreement recited that the Committee and Maussner wished to achieve a "full and final satisfaction of any and all claims against the other that arise from, relate to, originate in, or are involved in any way to the allegations made by the Committee, on behalf of the Debtor's estate" as against Maussner. This desire for finality provides motive, but the language of the Settlement and Release Agreement also speaks for itself. The mutual release extended to the debtor, to Maussner, and to their "agents, representatives and attorneys." On behalf of the Debtor's estate, the Committee released counsel from all claims, "whether known or unknown, contingent or accrued." In as much as the Committee alleges representation of Maussner as a necessary predicate for the imposition of compensatory sanctions, the broad release of any such counsel will preclude that recovery.

### Disgorgement and Disallowance of Pre-Petition Fees

Secondly, the Committee seeks a disgorgement of payments that Rama made to Hurwitz & Fine on account of pre-petition legal fees and the disallowance of any further claim for payment on account of pre-petition services. Pre-petition legal fees arise from services that are distinct and separate from whatever services may be rendered post-petition. Section 327 of the Bankruptcy Code requires court approval for the post-petition employment of attorneys for the debtor. Pursuant to 11 U.S.C. §330, the court must approve compensation for post-petition legal services, and then only after notice and a hearing. In contrast, the Bankruptcy Code does not require a judicial ratification of legal fees due for any period prior to the date of bankruptcy filing. Rather, the parties themselves will have generally determined the terms and conditions for compensation on account of pre-petition legal services. Hence, pre-petition fees and post-petition fees must

each stand on their own.  Sins committed after the date of bankruptcy filing will not impair the right to recover reasonable fees earned pre-petition.

In other contexts, counsel may assume certain ethical obligations even before the existence of a client.  For example, attorneys may appear on behalf of corporations to be formed.  Chapter 11 poses a different environment, in that representation of a debtor in possession will generally begin only upon the effective date of an order of appointment. Bankruptcy counsel may help with the preparation of schedules and a statement of financial affairs, and in that context will affirm the accuracy of any disclosure.  In the present instance, however, that role of bankruptcy counsel was performed by attorneys other than those at Hurwitz & Fine.  Consequently, the firm's role as special counsel was separately identified from any previous representation.  Although this court retains broad authority to address the misconduct of appointed counsel, prior services are the subject of only limited supervision, most notably in the context of objections to claims for pre-petition legal services.

Previously, the Committee objected to the proof of claim that Hurwitz & Fine had filed for its outstanding pre-petition services.  In that objection, the Committee asserted some of the same charges that it has alleged in its present motion.  For  example, the Committee argued that the firm had facilitated a fraudulent conveyance to Mark Maussner and had negotiated the employment agreement for Richard Maussner.  Ultimately, the Committee settled its objection and stipulated to the allowance of a general unsecured claim in the amount of $27,485.45.  The Court then approved that stipulation in an order dated March 17, 2009. Section 502(j) of the Bankruptcy Code provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause."  However, such cause would necessitate something more than a restatement of grounds previously asserted. Here, the Committee fails to direct our attention to any newly discovered facts that were not already part of the record at the time of the prior claim objection.  Accordingly, the

Court will not now reconsider the Committee's settlement of the pre-petition claim of Hurwitz & Fine.

Even if compensation for pre-petition services were now appropriately a subject for review, we would still reject this aspect of the Committee's motion. Hurwitz & Fine may have assisted the Maussner family in implementing the fraudulent conveyance of assets, and any such fraudulent conveyance may even have enabled the payment of certain pre-petition legal fees. But the fact of such pre-petition representation does not itself suggest any improper conduct by counsel. Activity within a zone of insolvency will impose special obligations upon corporate management, but not upon corporate counsel. Prior to its appointment as special bankruptcy counsel, Hurwitz & Fine owed no relevant duty to creditors or to a bankruptcy estate that did not even yet exist. Nor does the Committee suggest any pre-petition fraud that might compel an imposition of sanctions. Fraudulent conveyances do not establish the occurrence of fraud, either generally or upon the court. Fraud can only arise from a false representation. *See Field v. Mans*, 516 U.S. 59 (1995); *In re Lokotnicki*, 232 B.R. 583 (Bankr. W.D.N.Y. 1999). To the contrary, a fraudulent conveyance needs no false statement, but can occur whenever an insolvent debtor transfers assets for an inadequate consideration. Standing apart from any subsequent activity, the pre-petition legal services indicate no basis for either a disgorgement of fees already paid or the disallowance of a claim for fees due and owing.

### Disgorgement of Post-Petition Fees

Finally, the Committee seeks the disgorgement of all prior allowances to Hurwitz & Fine for post-petition services and advances. After its appointment as special counsel, Hurwitz & Fine made two applications for interim fee allowances. The first application sought payment for post-petition services rendered and disbursements incurred in the combined amount of $78,647.44. By order dated October 16, 2000, the Court authorized an allowance of $63,647.44, of which $40,000 was to be paid from funds that the firm held

as a retainer. The order also deferred consideration of the remainder of the firm's request "until such time as other professional fees and expenses are considered by the Court." The second interim application sought compensation and reimbursements totaling $19,607.92. By order dated November 16, 2001, the court approved a partial allowance in the amount of $17,744.42. Thus, to date, Hurwitz & Fine has received $81,391.86 on account of its post petition services and disbursements. In opposing the Committee's motion to compel a disgorgement of this sum, Hurwitz & Fine asks that the prior awards be treated as a final adjudication of its rights. Alternatively, the firm argues that undue delay by the Committee should preclude any reconsideration of the prior awards.

Subject to the requirements of 11 U.S.C. §330, the Bankruptcy Court may award compensation and reimbursement to the attorneys for a debtor in possession. However, because section 330(a)(3) requires that the award take "into account all relevant factors," Courts must generally defer the grant of a final award until at or near the completion of the attorney's representation. For this reason, as in the present instance, professionals will often request interim compensation pursuant to 11 U.S.C. §331. With regard to post-petition fees paid to Hurwitz & Fine, both of the authorization orders reference only the approval of an "interim application." As mere interim allowances, these orders leave for another day the issue of final compensation. Any final award must then address the direction of 11 U.S.C. §330(a)(5), which states that "[t]he court shall reduce the amount of compensation awarded [upon a final application] by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate."

More than a decade has passed since the Court last granted an interim fee allowance to Hurwitz & Fine. However, any delay in reaching a final decision on fees is at least equally attributable to the law firm, which chose not to request a final allowance under 11 U.S.C. §330. On balance, therefore, Hurwitz & Fine lacks grounds to charge the Committee

with any undue procrastination.  Rather, the final allowance of post-petition fees remains an open issue that the Committee may now present for review.

In accepting appointment as special counsel for the debtor in possession, Hurwitz & Fine assumed a duty of loyal representation to the bankruptcy estate in its quest to maximize a recovery for the benefit of creditors.  By its motion, the Committee now properly poses the question of whether the firm has satisfied this obligation with sufficient commitment to warrant a final allowance of post-petition fees.  The Committee further invokes 11 U.S.C. § 328(c), which states in relevant part that "the court may deny allowance of compensation for services and reimbursement of expenses of a professional person . . . if, at any time during such professional person's employment . . ., such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed."  Interestedness and conflict are conclusions not yet proven to this judge, but are mere accusations which the Committee will need to establish by a preponderance of evidence.  Even then, the disallowance of fees is permissive, not mandatory.  For this reason, the Court will determine a final fee allowance only after a consideration of "all relevant factors," 11 U.S.C. § 330(a)(3), including both those listed in the statute and those that the Committee may now attempt to demonstrate.

## Conclusion

For all of the reasons stated herein, the Committee's motion for sanctions is dismissed except to the extent that it seeks a disgorgement of post-petition fees paid to Hurwitz & Fine, P.C.  Because interim allowances were paid directly to this professional corporation as a duly appointed special counsel, only the professional corporation is subjected to the possibility of disgorgement.  Accordingly, the Committee's motion is dismissed *in toto* with respect to the individual respondents. By separate communication,

00-12654K	12

the Court will hereafter schedule a conference for purposes of setting an evidentiary hearing on the unresolved portions of the Committee's motion.

So ordered.

Dated:     Buffalo, New York          /s/    CARL L. BUCKI
           July 12, 2013              Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.